**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>Mark Wade McCune,<br><br>               Debtor. | Chapter 13 Proceeding<br><br>Case No. 4:21-bk-06099-SHG |
| Mark Wade McCune,<br><br>               Plaintiff,<br><br>v.<br><br>Joseph E. Salmon; Aldridge Pite LLP; Wells Fargo Bank; Wells Fargo Bank, National Association, as Indenture Trustee for GMACM Home Equity Loan Trust 2004-HE1,<br><br>               Defendants. | Adversary No. 4:22-ap-00018-SHG<br><br>**MEMORANDUM DECISION** |

## I. INTRODUCTION

Pending before the Court are three motions to dismiss ("Motions") filed by all the defendants named in the case (collectively "Defendants"): (1) *Motion to Dismiss* filed by Wells Fargo Bank, National Association, as Indenture Trustee for GMACM Home Equity Loan Trust 2004-HE1 (the "Trust"); (2) *Motion to Dismiss* filed by Wells Fargo Bank, National Association (the "Bank"); and (3) *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon*

*Which Relief can be Granted and Joinder to Wells Fargo Bank, National Association, as Indenture Trustee for GMACM Home Equity Loan Trust 2004-HE1'S Motion to Dismiss* filed jointly by Aldridge Pite, LLP ("Aldridge Pite") and Josephine E. Salmon ("Salmon").[1]

This case consolidates Debtor's objection to Proof of Claim # 4 in Debtor's bankruptcy case[2], and the dispute over the validity of the property lien recorded against Debtor's residence located at 2131 North Frannea Drive, Tucson, Arizona, 85712 (the "Property"). An oral argument was held on May 19, 2022.

For the reasons explained below, the Court grants Defendants' Motions, dismisses this adversary proceeding with prejudice and overrules Debtor's objections to allowance of Proof of Claim # 4.

## II.  JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K).

## III.  FACTUAL AND PROCEDURAL HISTORY

### A.  Procedural History

Debtor commenced this bankruptcy case by filing a petition for relief under chapter 13 of the Bankruptcy Code on August 6, 2021.[3]  On October 11, 2021, the Trust filed Proof of Claim #4 ("POC #4") in Debtor's bankruptcy case.[4] POC #4 was signed by Josephine E. Salmon, as the Attorney for Creditor, and indicated she worked at Aldridge Pite, LLP, located in San Diego, California.[5] Attached to POC #4 were: (1) Loan Payment History from First Date of Default[6]; (2) Notification of Contact Information and Important Notice[7]; (3) Proof of Claim Disclosures[8]; (4) Quit

---

[1] Adv. DE 6, DE 7, and DE 8.
[2] Adm. DE 43 (4:21-bk-06099-SHG).
[3] Adm. DE 1.
[4] Claims Register, case number 4:21-bk-06099-SHG, at POC #4.
[5] Id., p. 3.
[6] Id., p. 4-9.
[7] Id., p. 10-11.
[8] Id., p. 12-14.

Claim Deed of real property located at 2131 N. Frannea, Tucson, Arizona, 85712, by Lois A. Knott to Mark W. McCune, recorded July 7, 2006, in the Pima County Recorder's Office at sequence number 20061300002[9]; (5) Quit Claim to Joint Tenancy Deed of real property located at 2131 N. Frannea, Tucson, Arizona, 85712, by Lois A. Knott to Mark W. McCune, recorded in Pima County Recorder's Office on July 21, 2006, at sequence number 20061400257[10]; (6) redacted copy of Certificate of Death of Lois A. Knott[11]; (7) Letter appointing a personal representative in the Matter of the Estate of Lois A. Knott by the Pima County Superior Court dated March 19, 2007[12]; (8) Deed of Distribution by Lois A. Knott's personal representative to Mark McCune of the real property located on Frannea, in Tucson, Arizona[13]; (9) Deed of Trust dated May 22, 2003, executed by Lois A. Knott as borrower in favor of Nova Financial & Investment Corporation ("Nova") as lender and granting Nova a security interest real property located at 2131 N. Frannea, Tucson, Arizona for a Home Equity Line of Credit ("HELOC") not to exceed $100,000 not including interest, finance charges, and other fees and charges validly incurred by borrower and recorded with the Pima County Recorder's Office on May 30, 2003, at sequence number 20031040618[14]; (10) Corporate Assignment of Deed of Trust by Nova to Mortgage Electronic Registration Systems, Inc. of the Deed of Trust executed by Lois A. Knott in favor of Nova and recorded on May 30, 2003, in the Pima County Recorder's Office at sequence number 20031040618[15]; (11) Assignment of Deed of Trust by Mortgage Electronic Registration Systems, Inc., as beneficiary to Wells Fargo Bank, N.A., as Indenture Trustee for GMAC Home Equity Loan Trust 2004-HE1, dated September 22, 2021, and recorded in the Pima County Recorder's Office on September 23, 2021, at sequence number 20212660673[16]; (12) Home Equity Line of Credit Agreement and Disclosure Statement dated May 22, 2003, and executed by Lois A.

---

[9] Id., p. 15.
[10] Id., p. 16.
[11] Id., p. 17.
[12] Id., p. 18.
[13] Id., p. 19.
[14] Id., p. 20-27.
[15] Id., p. 28-29.
[16] Id., p. 30.

Knott in favor of Nova as lender with a credit limit of $100,000 and an initial advance of $54,000, including endorsements without recourse to GMAC Mortgage Corporation.[17]

On October 15, 2021, Debtor filed an objection to POC #4 filed by the Trust.[18] An initial hearing on Debtor's objection to POC #4 was conducted on December 14, 2021.[19] At the initial hearing it became apparent that Debtor's was essentially seeking a determination that the lien on his real property located at 2131 N. Frannea, Tucson, Arizona, was invalid and unenforceable.[20] Debtor was instructed to file an adversary complaint under Rule 7001(2), F.R.B.P., because he was seeking to avoid the lien on his property as evidenced by the documents attached to POC #4.[21] It was further suggested that Debtor seek the assistance of counsel if possible before the next scheduled hearing on this matter set for February 1, 2022.[22]

On January 31, 2022, Debtor filed his adversary complaint seeking to avoid the lien in favor of the Trust.[23] On February 1, 2022, a continued hearing on Debtor's objection to POC #4 was conducted.[24] At this hearing, Debtor requested a continuance to obtain counsel and to amend/modify the adversary complaint.[25] Debtor's request for a continuance was denied and counsel for the lien holder indicated she had received a copy of Debtor's adversary complaint and indicated a timely response would be filed.[26] Debtor was informed that the additional time he requested was not necessary because the next hearing on this matter would not be conducted until after the lien holder filed a response to Debtor's adversary complaint.[27]

On February 28, 2022, the Trust and Bank filed two separate motions to dismiss Debtor's

---

[17] Id., p. 31-38.
[18] Adm. DE 43.
[19] Adm. DE 59.
[20] Id.
[21] Id.
[22] Id.
[23] Adv. DE 1.
[24] Adm. DE 69.
[25] Id.
[26] Id.
[27] Id.

adversary complaint.[28]  On March 3, 2022, Aldridge Pite, LLP, and Josephine E. Salmon filed a separate motion to dismiss and a joinder in the Trust's motion to dismiss Debtor's adversary complaint.[29] In total the lien holder and its counsel filed three separate motions to dismiss Debtor's adversary complaint pursuant to Rule 7012(b)(6), F.R.B.P.[30] On March 17, 2022, a hearing was held on Debtor's emergency motion to extend the time to file responses to the pending Motions until April 15, 2022.[31] At the hearing, Debtor's request for additional time to respond was granted and he was ordered to file his responses by April 22, 2022.[32] At the same time, the Defendants were ordered to file any replies by May 6, 2022 and a hearing was set for May 19, 2022, to conduct oral argument on the Motions, Debtor's oppositions to them and the replies.[33]

**B. Prior Litigation**

This action is a continuation of a long-standing dispute between Debtor and the Defendants, taking on various forms in different courts. Debtor's ultimate goal in the continuing litigation is to prevent Defendants from successfully foreclosing on the Property. Since 2016, Debtor has filed multiple actions, including:

1. Arizona Federal District Court Case No. 4:19-cv-00525 (McCune v. PHH Mortgage);

2. Arizona Federal District Court Case No. 4:19-cv-00600 (McCune v. Nova);

3. Arizona Federal District Court Case No. 4:19-cv-00589 (Bankruptcy Appeal);

4. Pima County Superior Court Case No. C20195500 (McCune v. PHH Mortgage; Western Progressive-Arizona, Inc., and Nova Home Loans);

5. United States Bankruptcy Court for the District of Arizona Case No. 4:18-bk-00838-SHG;

6. United States Bankruptcy Court for the District of Arizona Adversary Proceeding Case

---

[28] Adv. DE 6, 7.
[29] Adv. DE 8.
[30] Adv. DE 6-8.
[31] Adv. DE 10.
[32] Id.
[33] Id.

No. 4:19-ap-00273-SHG;

7.  United States Bankruptcy Court for the District of Arizona Adversary Proceeding Case No. 4:19-ap-00388-SHG.

The aforementioned cases were all subsequently dismissed or closed for various reasons. Several important undisputed facts arise from review of the minute entry orders or judgments entered by these courts.

1.  ***McCune v. PHH Mortgage; Western Progressive-Arizona, Inc., and Nova Home Loans*, Pima County Superior Court Case No. C20195500**

In this case, the superior court determined the undisputed facts established that Debtor inherited the Property from his mother, Lois A. Knott. Ms. Knott had borrowed money, pursuant to the May 22, 2003, HELOC. The HELOC is secured by a Deed of Trust on the Property, which was recorded on May 30, 2003, with the Pima County Recorder (the "Deed of Trust"). The HELOC includes three indorsements; the third indorsement is in blank. The Trust holds the HELOC.[34]

The original beneficiary of the Deed of Trust was Nova. On May 30, 2003, the beneficial interest in the Deed of Trust was assigned to Mortgage Electronic Registration Systems, Inc. and, on October 12, 2012, the beneficial interest was assigned to the Trust. In or around February 2013, the loan servicing associated with the HELOC was transferred to Ocwen Home Loans Servicing, LLC ("Ocwen"). On April 1, 2016, Western Progressive Arizona, Inc. was substituted as the Trustee on the Deed of Trust. An Ocwen representative, on behalf of the Trust, signed the Substitution of Trustee, which was recorded with the Pima County Recorder on April 5, 2016.[35]

On April 25, 2016, a trustee sale of the Property was noticed for August 17, 2016, and apparently rescheduled to September 20, 2016. On September 16, 2016, Debtor filed a Complaint and Application for temporary restraining order seeking to stop the trustee sale. That same day, the Pima County Superior Court issued a temporary restraining order Debtor requested. On October 10, 2016,

---

[34] Adv. DE 6, Ex. A-D, p. 4.
[35] Id., p. 5.

Debtor filed an amended complaint. On October 14, 2016, the superior court granted a preliminary injunction staying any trustee sale, which remained in effect for the duration of the case. Debtor's complaint and amended complaint sought injunctive relief to stop the trustee sale of the Property. Debtor challenged Defendants' legal right to sell the Property, and Debtor claimed he was blocked from making payments, and that he received inaccurate payoff information.[36]

In dismissing Debtor's state court complaint against the Trust, Ocwen, and Western Progressive Servicing, the Pima County Superior Court ruled in part that the Trust, as the holder of the HELOC and the beneficiary of the Deed of Trust, has the legal right to initiate a trustee sale.[37] Further, because it was uncontested that the loan is in default (and had been for years) and considering the absence of any legal impediment to a trustee sale of the Debtor's property, the most significant underpinnings of Debtor's claims failed as a matter of law.[38]

2. ***McCune v. PHH Mortgage,*** **Arizona Federal District Court Case No. 4:19-cv-00525**

Similarly, in 2019, Debtor filed an action in the United States District Court for the District of Arizona, CV-19-00525-TUC-CKJ.[39] In this case, Debtor filed a complaint against PHH Mortgage alleging again that he was entitled to the issuance of a temporary restraining order and preliminary injunction.[40] Debtor raised numerous claims including: (1) mail fraud; (2) that he was never provided an accounting, validation of the debt or a pay-off statement; (3) that PHH did not own a loan, debt or deed of trust on his property; (4) that PHH was not hired to service the loan secured by his property; (5) PHH was not the foreclosing party; (6) that Debtor disagreed with the foreclosure price because the deed of trust did not secure any value; (7) Wells Fargo did not have a loan on his property; (8) Nova was not a true lender; (9) enforcement of the debt secured by his property is barred by the

---

[36] Id.
[37] *See* A.R.S. §§ 47-3205(B); 47-3301.
[38] Adv. DE 6, Ex. A-D, p. 6-7.
[39] Id., Ex. C, p. 31.
[40] Id., p. 32.

statute of limitations; (10) Nova and PHH are being investigated for allegedly committing fraud and Nova has admitted it has no loan secured by Debtor's property; (11) PHH was not a real loan servicer; (12) Debtor inherited the real property with zero debt and he believes the subject loan was paid off in 2003.[41]

Pursuant to Rule 12(b)(6), the district court dismissed all Debtor's claims for two main reasons. First, the undisputed facts established Debtor inherited real property from his mother after she borrowed substantial sums pursuant to a home equity line of credit agreement and after she voluntarily secured this debt by the Property. Debtor received the Property through a deed of distribution, but the real property was subject to the lien created by his mother in favor of the holder of the note and deed of trust she executed before her death. At the time Debtor inherited the Property, the underlying debt had been in default for many years.

The district court found in ruling on the motion to dismiss Debtor's complaint that the Property originally belonged to Debtor's mother—Lois Knott.[42] In May 2003, Knott obtained a HELOC from Nova that was secured by the Deed of Trust on the Property (the "Subject Loan").[43] Although Nova was the original lender, the Subject Loan was subsequently transferred and assigned to the Trust in 2013.[44] The HELOC provided Knott with a 10 year "draw period" where she could draw funds, up to $100,000.00.[45] She took an initial advance of $54,000.00 in May 2003. After that, Knott drew various amounts from the HELOC, culminating with a final draw in the amount of $8,700.00 in August 2004, bringing the total amount withdrawn to $100,000.00.[46] The HELOC provided for a repayment period of 5 years after the 10 year "draw period" expired. Debtor did not dispute that Knott signed the HELOC Agreement and withdrew funds during the "draw period."

---

[41] Id., p. 33-36.
[42] Id., p. 31-32.
[43] Id.
[44] Id.
[45] Id.
[46] Id.

Knott passed away in July 2006 and in March 2011, Debtor obtained title to the Property through a Deed of Distribution.[47]

The Deed of Distribution provided, in pertinent part:

> The undersigned Personal Representative, in order to make distribution of the property of this estate in compliance with A.R.S. Title 14, hereby distributes, assigns and quitclaims to: Mark McCune, a single man, subject to all encumbrances thereon, all right, title and interest of the decedent in and to the following described property located in Pima County, Arizona, 2131 E. Frannea Dr., Tucson, AZ.

The Subject Loan was in default and, as of January 2, 2020, the amount due and owing is $140,444.87.[48] It is undisputed that the HELOC loan has been in default since 2011 when Lois Knott's probate estate ceased making payments and distributed the Property securing this debt to Debtor. Since the Property was distributed to Debtor in 2011 pursuant to the deed of distribution, he acknowledged that he has never made any payment on the HELOC loan. Since 2016, multiple attempts to foreclose on the Property were made, but due to a variety of stalling tactics initiated by Debtor, including requests for temporary restraining orders and a bankruptcy, Debtor has thus far successfully thwarted the inevitable.[49]

The second reason the district granted the motion to dismiss was because all of Debtor's claims or defenses to enforcement of the deed of trust were without legal merit, unsupported by any facts, were contrary to documents attached to the complaint establishing the then current principal balance of the debt secured by Debtor's property and because Debtor failed to assert any viable or cognizable legal theories in his complaint. Accordingly, the district court granted the motion to dismiss under Rule 12(b)(6) and dismissed Debtor's complaint with prejudice.[50] The district court's final judgment dismissing Debtor's complaint with prejudice was subsequently affirmed on appeal by

---

[47] Id.
[48] Id.
[49] Id.
[50] Id., p. 36.

the Ninth Circuit Court of Appeals on July 23, 2020.[51] On appeal, the Ninth Circuit Court of Appeals rejected Debtor's contention that the district court was required to hold an evidentiary hearing prior to dismissing his action.[52]

3. **Debtor's Current Litigation in Bankruptcy Court**

In the current iteration of Debtor's litigation to prevent foreclosure of the property, he commenced this bankruptcy proceeding on August 6, 2021. As set forth above, the Trust timely filed Proof of Claim #4 asserting a secured claim of $173,808.84.[53] Debtor is not personally liable for repayment of the Subject Loan because he is not a maker of the credit agreement with Nova, nor is he the maker of the note evidencing the loan obligation executed by Lois Knott in favor of Nova. Nevertheless, Debtor purportedly inherited the Property after the death of his mother, and he claims ownership of the Property in his schedules[54] which is subject to the deed of trust originally executed by Lois Knott to secure the loan she obtained from Nova. On October 15, 2021, Debtor objected to Proof of Claim # 4. This objection was later merged with the instant adversary proceeding to permit the Debtor to challenge the validity of the lien originally recorded by Nova against the Property. For the purpose of resolving Debtor's objections to POC #4 and the motions to dismiss Debtor's adversary complaint, the Court has reviewed and considered the documents attached to POC #4 and has taken judicial notice of undisputed facts contained in orders entered by other courts that have considered and resolved identical claims Debtor has previously asserted.

## IV.  <u>ISSUES</u>

1. Is the Debtor precluded from disputing the validity of the Subject Loan?

2. Does Debtor have standing to assert the assignment of the Subject Loan is invalid?

---

[51] Id., p. 44-45.

[52] Id.

[53] Courts generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed. See 11 U.S.C. § 502(b). *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 452, 127 S. Ct. 1199, 1206, 167 L. Ed. 2d 178 (2007).

[54] Adm. DE 15, p.3

3. Does Debtor state a claim upon which relief can be granted?

4. Should Debtor be granted leave to amend the Complaint?

## V. <u>DISCUSSION</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[55] "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."[56] The Court will address all of the Motions in this memorandum decision.

### A. <u>Factual Assertions and Legal Claims made by Debtor</u>

Although it is somewhat unclear and disorganized, Debtor's Complaint asserts the following material factual assertions and legal claims: (1) Debtor's mother paid off the Nova loan before she died; (2) Defendants fraudulently filed the secured claim; (3) documents show that no loan or mortgage exist on the property; and (4) the loan was improperly/illegally assigned to Defendants and the lien was not properly recorded.

At the hearing on May 19, 2022, Debtor clarified that his claims are generally made against Aldridge Pite and Salmon (and not against the Trust nor the Bank), with the additional caveat he believes there is no remaining debt owed to support any lien on the Property. Debtor asserts several claims against Aldridge Pite and Salmon, summarized as follows:

Count 1: Aldridge Pite and Salmon do not have a lien or security interest in the Property;

Count 2: Aldridge Pite and Salmon breached the implied covenant of good faith and fair dealing;

Count 3-4: Aldridge Pite and Salmon committed fraud and slander of title because they claim a party holds a valid lien over the Property;

Count 5: Aldridge Pite and Salmon negligently represented a third party; and

---

[55] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[56] *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Count 6: Aldridge Pite and Salmon breached a fiduciary duty.

Debtor also asserts multiple "causes of action," which he admitted are mostly copied off the internet. These causes of action contain numerous assertions that are clearly unrelated to the instant case, including the identification of parties not involved in the adversary and non-existent class members. Nonetheless, Debtor's causes of action #1-14 (the Complaint skips over number 6 and 9), can be summarized:

Cause of Action # 1 and # 7: Defendants violated the Truth in Lending Act ("TILA") due to failure to provide proper disclosures and/or improper calculation of the debt.

Cause of Action # 2- # 4: Defendants are engaged in "racketeering activity" in violation of RICO, 18 U.S.C. § 1962. Additionally, Defendants are involved in a conspiracy that caused Debtor and "class members" to lose millions of dollars.

Cause of Action # 5: Defendants violated the Real Estate Settlement Procedures Act ("RESPA") by not providing accurate accounting, title transfers, loan information, and caused Debtor to suffer damages.

Cause of Action # 8: Defendants implied the existence of a contract and breached this contract.

Cause of Action # 10- #12: Defendants engaged in fraud by inducing Debtor into the loan and did not disclose the terms of the agreement.

Cause of Action # 13: Defendants are in a conspiracy by engaging in these actions.

Cause of Action # 14: Defendants received the deed of trust by fraud, and therefore, the deed of trust should be invalidated.

**B.** **Debtor is Precluded from Challenging Validity of the Underlying Subject Loan**

Debtor alleges that there is no debt and thus no valid lien on the Property. Debtor asserts that the Bank, Aldridge Pite, and Salmon do not own any loan, debt, or deed of trust on the Property. Although this assertion may be correct and undisputed, it is irrelevant. The Trust is the actual owner

of the debt, and it is the creditor who filed the proof of claim #4 in Debtor's bankruptcy case.

Debtor stated at oral argument that he is not pursuing any claims against the Trust, rather he is only pursuing claims against Aldridge Pite and Salmon. Debtor asserts he never previously sued Aldridge Pite and Salmon, and therefore, the doctrines of res judicata and claim preclusion are inapplicable. Nonetheless, because Debtor asserts that his mother paid off the loan before she passed away, an examination of the validity of Trust's claim secured by the Property is required.

Determining the validity of the Subject Loan is generally a factual question that cannot be resolved by a Rule 12(b)(6) motion. To overcome this legal impediment, the Trust asserts that the Court should take judicial notice of prior litigation in which the Debtor was a party that resulted in the entry of a final judgment or order that Subject Loan remains valid and enforceable. In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.[57] A motion to dismiss on the basis of res judicata or collateral estoppel may properly be brought under Rule 12(b)(6).[58]

The Trust attached to its Rule 12(b)(6) motion the Order of Dismissal ("Dismissal Order") entered in *McCune v. PHH Mortgage* designated Case No. 4:19-cv-00525, in the United States District Court for the District of Arizona ("District Court Case").[59] The Dismissal Order was subsequently affirmed by the United States Court of Appeals for the Ninth Circuit.[60] PHH Mortgage, was the Defendant in the District Court Case and claimed that it serviced the Subject Loan on behalf of the Trust.[61]

The Dismissal Order can have preclusive effect only if application of these doctrines satisfies

---

[57] *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[58] *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984) (affirming the district court's dismissal of complaint pursuant to Rule 12(b)(6) on res judicata grounds); *Campanelli v. Regents of U. of California*, 168 F.3d 498 (9th Cir. 1998) (affirming the district court's determination that the action was barred by res judicata and collateral estoppel).

[59] Adv. DE 42, Ex. B.

[60] Adv. DE 42, Ex. C.

[61] Debtor disputes the fact that PHH Mortgage serviced the Subject Loan, that dispute, however, does not preclude application of Rule 12(b)(6) or the doctrines of issue and claim preclusion.

the applicable state law requirements for claim and issue preclusion.[62]

In this case, Arizona rules of claim and issue preclusion apply. Claim preclusion, as traditionally applied in civil litigation, means that "a final judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same claim."[63] Specifically, a party seeking to invoke the doctrine must establish "(1) an identity of claims in the suit in which a judgment was entered and the current litigation, (2) a final judgment on the merits in the previous litigation, and (3) identity or privity between parties in the two suits."[64]

On the first element, the Debtor previously asserted in the District Court Case the same claim that the Subject Loan was previously paid off. In dismissing this claim the District Court stated:

> Plaintiff's fifteenth claim alleges that he inherited the Property with zero debt in March 2011 and that he "believes" the Subject Loan was paid off in 2003. None of the attachments to Plaintiff's Amended Complaint support his contention. Rather, those attached documents clearly indicate that the Subject Loan has a current balance over $144,000.00. Plaintiff has not provided any evidentiary support for his contention that the entire Subject Loan was paid off in 2003. Plaintiff's "belief" that the Subject Loan was paid off is not a sufficient basis to support a cognizable legal theory and Plaintiff's Claim 15 will be dismissed.[65]

On the second element, the Dismissal Order was a final judgment on the merits in the previous litigation. Debtor's claim the loan was paid off by his mother was dismissed with prejudice and this constitutes a final judgment on the merits.[66] Thus, the second element is also met.

On the third element, there is privity between the parties in the instant adversary proceeding and the District Court Case. The Debtor was also the plaintiff in the District Court Case. Thus, Debtor is bound by the Dismissal Order entered in the District Court Case.

---

[62] *See Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) (holding that claim preclusive effect of dismissal order was governed by federal rule that incorporated forum state's law of claim preclusion); *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994) (holding that federal court in diversity case applies the collateral estoppel rules of the forum state).

[63] *Lawrence T. v. Dept. of Child Safety*, 438 P.3d 259, 261 (App. 2019).

[64] *Id.*

[65] Adv. DE 42, Ex. B.

[66] *See* Ariz. R. Civ. P. 41; *De Graff v. Smith*, 62 Ariz. 261, 157 P.2d 342 (1945) (holding that a dismissal with prejudice is an adjudication on the merits of the case), *overruled in part by Kopp v. Physician Grp. of Arizona, Inc.*, 244 Ariz. 439, 421 P.3d 149 (2018).

Because all elements of claim preclusion are met, Debtor is precluded by operation of law from asserting that the Subject Loan is invalid or was paid off by his mother before her death in the instant adversary proceeding. Under claim preclusion, a final judgment may preclude later litigation of other causes of action based on the same transaction or series of transactions out of which an action arises, considering "whether the facts are related in time, space, origin, or motivation."[67] To the extent Debtor raises other causes of actions based on the validity of the Subject Loan, they are also precluded by operation of this doctrine.

Even if the Court considers the newly discovered "evidence" Debtor attached to his Complaint, none of this "new evidence" raises any material issues of fact or legally supports his claim that the Subject Loan was paid off.[68] The documents attached to his Complaint include a spreadsheet that clearly shows a principal balance of $98,917.85 was owed on the loan as of 2009. Debtor mistakenly asserts that a single column in that exhibit attached to the Trust's proof of claim shows $0 was past due.[69] Debtor's interpretation of this exhibit is incorrect. The column he refers to in the exhibit was clearly meant to show the monthly payments that became due were being paid at the time. Debtor purposely misinterprets the exhibit by erroneously suggesting it proves that there was no debt owed.[70] The remainder of the documents that Debtor attached to his Complaint and to his oppositions to the Motions do not provide any evidentiary support, nor do they establish any legal basis for his contention that the Subject Loan was paid off.[71]

---

[67] Restatement § 24; *Crosby-Garbotz v. Fell in & for Cnty. of Pima*, 246 Ariz. 54, 59, 434 P.3d 143, 148 (2019).

[68] A claim objection, without evidence, cannot defeat a claim presumed to be valid under Rule 3001(f). *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). As a practical matter, "the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." Id. at 1040.

[69] Rule 3001(f), F.R.B.P., states: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

[70] But even where a party in interest objects, the court "shall allow" the claim "except to the extent that" the claim implicates any of the nine exceptions enumerated in § 502(b). *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, supra, 549 U.S. at 449, 127 S. Ct. at 1204. Thus, the Trust's POC #4 must be allowed under § 502(b) unless it is unenforceable within the meaning of § 502(b)(1). *Id.*, 549 U.S. at 450, 127 S. Ct. at 1204. Both the note or deed of trust attached to POC #4 are enforceable under state law in view of the decisions of the Pima County Superior Court and the Arizona District Court described above.

[71] To overcome the presumption of the claim's validity under Rule 3001(f), F.R.B.P., the objecting party must present evidence with probative value equal to that of the proof of claim to rebut the claim. *Lundell v. Anchor Constr. Specialists,*

For these reasons, the entry of the Dismissal Order precludes Debtor from arguing in this adversary proceeding that the Subject Loan was previously paid off. As a result, all of Debtor's arguments that are based on his theory that the Subject Loan was paid off are barred by application of claim and issue preclusion. Therefore, the Debtor's objections to granting the Trust's motion to dismiss this claim based on the invalidity of the underlying debt are overruled.

## C. **Debtor does not have Standing**

Debtor lacks standing to raise claims against Defendants. Debtor alleges facts and claims, but they essentially "boil down" to his assertion that the assignment of the Subject Loan to the current creditor (Trust) was somehow improper. To have standing, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[72] Because the District Court previously entered a final judgment and determined the debt secured by the Property was valid and enforceable, Debtor cannot assert any concrete or particularized injury even if the Subject Loan was improperly assigned.

Aldridge Pite and Salmon represented the Trust and filed on their behalf, Proof of Claim # 4. Debtor alleges that Aldridge Pite and Salmon do not actually represent the creditor who is the legal holder of the Subject Loan but have instead engaged in a scheme and false representations. Debtor asserts that Aldridge Pite and Salmon are representing an entity that was "illegally" assigned the Subject Loan and deed of trust.[73]

Debtor fails to allege how he has an interest in or suffered injury arising from the "allegedly

---

*Inc.*, *supra*, 223 F.3d at 1039.

[72] *California Sea Urchin Commn. v. Bean*, 883 F.3d 1173, 1180 (9th Cir. 2018), as amended (Apr. 18, 2018).

[73] Rule 3001(c)(1) required the Trust to attach to proof of claim # 4, the writings on which the claim and the security interest were based—the note and the deed of trust—and Rule 3001(d) required the Trust to submit with the proof of claim evidence that the security interest had been perfected. The Trust did this and these documents constituted prima facie evidence of the validity of the Trust's secured claim and its prepetition perfection in accordance with state law. Debtor did not produce any evidence or legal argument sufficient to overcome the presumption of the claim's validity.

invalid" assignment of the Subject Loan. Because there is a valid debt secured by Debtor's Property, he must either repay all amounts secured by the Property or surrender the Property, regardless of who holds the legal assignment of the debt and the deed of trust securing that claim.[74] Arizona's deed of trust statute does not require a beneficiary of a deed of trust to produce the underlying note (or its chain of assignment) to conduct a Trustee's Sale.[75] Thus, Debtor has not suffered an "injury in fact" even if there was an alleged wrongful assignment of the Subject Loan.

Debtor lacks standing to challenge the validity of any recorded assignments. Even if he could prove, which he cannot, that an illegal assignment occurred, the Debtor is without standing in that dispute. That dispute would instead be resolved by litigation between the "legal" assignee, the alleged "illegal" assignee, and the assignor.[76]

### D. <u>Failure to State a Claim Upon Which Relief can be Granted</u>

Each of Debtor's individual claims and causes of actions against Defendants are considered and reviewed below. Debtor fails to state any claims upon which relief can be granted.

On Count 1, Aldridge Pite and Josephine Salmon do not, simply by filing a proof of claim in Debtor's bankruptcy case in their representative capacities, assert a lien or security interest in the Property.[77] To the extent Debtor asserts claims against them, no relief that could be granted. The motion to dismiss is granted and Count 1 is dismissed.

On Count 2 and 6, Aldridge Pite and Josephine Salmon did not breach any implied covenant of good faith and fair dealing or fiduciary duty to the Debtor because they have no contract with Debtor, nor do they represent him. As a matter of law this claim must fail. The motion to dismiss

---

[74] *Sitton v. Deutsche Bank Nat. Tr. Co.*, 233 Ariz. 215, 222, ¶ 33 (App. 2013).

[75] *Blau v. Am.'s Serv. Co.*, 2009 WL 3174823, at *6 (D.Ariz.2009); *Mansour v. Cal–W. Reconveyance Corp.*, 618 F.Supp.2d 1178, 1181 (D.Ariz.2009); *Diessner v. Mortg. Elec. Registration Sys.*, 618 F.Supp.2d 1184, 1187 (D.Ariz.2009).

[76] *Sitton, supra.*, 233 Ariz. at 222, ¶ 33 (App. 2013) (Although the validity of the recordings may be material to the assignees or purported assignees of interests in the deed of trust, given the borrower's default, the validity of the disputed recordings was not material to the borrower.)

[77] Debtor's arguments against Aldridge Pite and Salmon are particularly perplexing because at no time the Trust, the real party in interest, ever asserted that either the law firm or Ms. Salmon signed or filed POC # 4 without its permission or authorization.

Count 2 and Count 6 is granted and these counts are dismissed.

On Count 3, 4, and 5, Debtor has failed to raise any plausible evidence or legal theory supporting his claim Aldridge Pite and Josephine Salmon filed any false documents attached to the proof of claim or improperly relied on their clients' assertions those documents were valid.[78] Even if Debtor could establish Aldridge Pite and Salmon negligently attached their clients' documents to the proof of claim, such an action for malpractice would only lie between the law firm and the client. Debtor would have no standing to enforce a claim regarding breach of duty of care applicable to the attorney-client relationship between Aldridge Pite/Salmon and their clients. As a matter of law Counts 3, 4 and 5 must fail. The motion to dismiss Counts 3, 4, and 5 is granted and these counts are dismissed.

On Causes of Action # 1 and # 7, Debtor asserts claims based on alleged violations of the Truth in Lending Act and claims for rescission. Debtor fails to establish this Court's subject matter jurisdiction over these claims. Federal courts are courts of limited jurisdiction.[79] They possess only that power authorized by Constitution and statute,[80] which is not to be expanded by judicial decree,[81] and it is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case.[82]

Section 1635(f) of Title 15 states that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first...." Many years appears to have passed since the Debtor's mother consummated this transaction, and Debtor failed to allege sufficient facts to state a plausible claim that his recission claim is timely

---

[78] Since at least 2016, when the Pima County Superior Court ruled, Debtor has known that the Trust legally holds the HELOC note agreement and by virtue of the assignment of the deed of trust it is also legally entitled to foreclose the Property under state law. His arguments to the contrary are without any factual support and are rejected.

[79] *Kokken v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673,1675, 128 L.Ed.2d 391 (1994).

[80] *See Willy v. Coastal Corp.*, 503 U.S. 131, 136–137, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986).

[81] *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

[82] *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 182, 56 S. Ct. 780, 782, 80 L. Ed. 1135 (1936); *Kokken*, 511 U.S. 375 at 114.

filed.[83] As a matter of law these causes of action must fail. The motion to dismiss Cause of Action # 1 and # 7 is granted and they are dismissed.

On Causes of Action # 2- # 4, Debtor asserts claims based on alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Debtor has failed to plead sufficient facts for relief to be granted. "The elements of a civil RICO claim are: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'"[84] Debtor mistakenly alleges that Defendants defrauded "class members" from Virginia through a conspiracy. Debtor failed to assert any facts relating to Defendants, nor any facts establishing that the elements of a RICO claim are met. As a matter of law, Causes of Action # 2- # 4 must fail. The motion to dismiss these causes of action is granted and they are dismissed.

On Cause of Action # 5, Debtor asserts that Defendants allegedly violated the Real Estate Settlement Procedures Act ("RESPA"). This statute aims to "eliminat[e] kickbacks and referral fees that tend to increase unnecessarily the costs of certain settlement services."[85] To the extent Debtor alleges his mother received inadequate disclosure in violation of 12 U.S.C. § 2605, Debtor's claims are time barred under 12 U.S.C. § 2614, which provides for a 3-year statute of limitation that runs from the date of the occurrence of the violation.[86] Additionally, Debtor was not the borrower or the purchaser of the Property. As a result, Debtor has no standing to assert any TILA and RESPA claims. As a matter of law Cause of Action # 5 must fail. The motion to dismiss this cause of action is granted and it is dismissed.

On Causes of Action # 8, # 10, # 11, # 12, and # 13, Aldridge Pite and Josephine Salmon did

---

[83] *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) ("[Section] 1635(f) is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period."), abrogated on other grounds by *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096 (9th Cir. 2018); see also *CTS Corp. v. Waldburger*, 573 U.S. 1, 9, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014) (statutes of repose generally may not be tolled).
[84] *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.2005).
[85] 12 U.S.C. § 2601(b)(2).
[86] 12 U.S.C. § 2614.

not breach any contract, nor did they fraudulently induce Debtor into borrowing money. Aldridge Pite and Josephine Salmon never entered a contract with Debtor, and Debtor did not state with specificity what kind of contract they may have implicitly created. Also, contrary to Debtor's Complaint, Aldridge Pite and Josephine Salmon do not assert that they hold a lien against Debtor's Property. As a result, all of Debtor's allegations in these five causes of action fail to state any plausible claims for relief. Similarly, the Bank does not assert that it holds a lien against Debtor's Property. As a result, Debtor failed to state a claim against the Bank upon which relief can be granted.

In any event, Aldridge Pite and Salmon only filed a proof of claim in Debtor's bankruptcy case and oppose his attempts to assert their actions were fraudulent. Nothing Debtor alleges or could assert based on their actions in this case could conceivably support a claim for fraud. The Dismissal Order previously determined the debt secured by Debtor's Property was valid and it had not been paid off as Debtor alleges. All the Debtor's claims of fraud are based on his mistaken belief that the debt secured by his Property is invalid and Aldridge Pite and Salmon knew it. No evidence supports this claim. Given the prior Dismissal Order, Debtor could not plausibly allege facts to support a fraud claim, even if leave to amend was granted. Based on collateral estoppel and issue preclusion, Debtor is not able to invent new claims in the hope he can relitigate these issues again. As a matter of law Causes of Action # 8, #10, # 11, #12, and #13 must fail. The motion to dismiss these causes of action is granted and they are dismissed.

On Cause of Action #14, there are no legal grounds to quiet title because the validity of the Subject Loan and the lien has already been determined in the District Court Case. As a matter of law Cause of Action # 14 must fail. The motion to dismiss this cause of action is granted and it is dismissed.

Accordingly, all of Debtor's claims against Defendants fail as a matter of law and their motions to dismiss Debtor's complaint against them is granted.

**D. No Leave to Amend Complaint**

The allowance or denial of amendments of pleadings under Bankruptcy Rule 7015 and Federal Rule of Civil Procedure 15 lies generally in the discretion of the trial court.[87] Although the rule should be interpreted with "extreme liberality," leave to amend is not to be granted automatically.[88] In determining whether to grant leave to amend, a trial court may look to factors such as: undue delay; bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party by virtue of allowance of the amendment; and futility of amendment.[89]

*Undue Delay*

On June 9, 2022, Debtor filed an Amended Complaint.[90] A party may generally amend its pleading once as a matter of course within: (1) 21 days of servicing it or (2) 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier.[91] Defendants filed their initial Motions under Rule 12(b) not later than March 3, 2022. Debtor requested and was granted an extension of time to respond to the motions to dismiss.[92]  Debtor filed his response to the motions to dismiss on April 22, 2022; May 2, 2022; and May 6, 2022.[93] Defendants filed their responses on May 6, 2022.[94] Debtor's Amended Complaint was filed far beyond the 21 days to be considered timely under Rule 15(a). If the Complaint was not timely amended, a party may amend its pleading only with the opposing party's consent or the court's leave.[95] Here, Debtor did not receive the opposing party's consent, nor was leave to amend the complaint granted. Debtor's untimely Amended Complaint, filed after the oral argument, is stricken based on Debtor's undue delay and his failure to comply with the Federal Rules of Bankruptcy Procedure.

---

[87] *In re Gunn*, 111 B.R. 291, 292 (B.A.P. 9th Cir. 1990).
[88] *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981)).
[89] *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).
[90] Adv. DE 69.
[91] Fed. R. Bankr. P. 7015; Fed. R. Civ. P. 15(a).
[92] Adv. DE 15.
[93] Adv. DE 23; DE 34; and DE 39.
[94] Adv. DE 42; DE 43.
[95] Fed. R. Civ. P. 15(a).

*Bad Faith, Dilatory Motive, and Undue Prejudice*

Since he filed this bankruptcy case, Debtor has filed hundreds of pages of pleadings and motions. Debtor has sought to continue this matter numerous times for various reasons, including Covid-19; attempts to obtain the services of an attorney; seeking the appointment of counsel by the Court; and seeking to require the lien holder to subordinate its first priority lien to permit the Debtor to obtain a loan to employ an attorney to continue the fight to invalidate the debt secured by the Property.

In addition, Debtor has filed notices of appeal from every adverse ruling or order that has been entered. Debtor has made numerous requests for continuance or stay to delay the determination of this adversary proceeding. Debtor has been in bankruptcy since August 6, 2021. Yet, Debtor has failed to propose or confirm a plan of reorganization in all that time because he can only successfully reorganize if he is able to invalidate the claim secured by his Property.

Lastly, and most importantly, the issues raised in this adversary proceeding have been previously raised by Debtor and rejected in final orders entered in cases he previously filed in the Bankruptcy Court, U.S. District Court for the District of Arizona, the U.S. Court of Appeals for the Ninth Circuit, and in Arizona state courts. Every time Debtor is unsuccessful in his claim the debt was paid or is unenforceable, he files a new action in a different forum to further delay the foreclosure of the debt secured by his mother's former residence. Debtor conduct is not in good faith and his attempt to amend the adversary complaint more than six months after it was filed, months after motions to dismiss were pending, and after oral arguments were concluded is further evidence of his dilatory conduct and unreasonable attempts to delay the determination of the merits of the claims against his Property. To allow Debtor to amend his complaint at this stage of the bankruptcy case and adversary proceeding, in light of the years of litigation the Debtor already filed and lost, would unnecessarily and unduly prejudice the Defendants.

*Futility of Amendment*

More importantly, permitting Debtor to file an amended complaint in this case would be futile. The core issue of whether Debtor's Property is subject to a valid lien has already been litigated in previous cases. Debtor is precluded now from raising this claim, even if it is based on his attempts to "spin" new theories. Examination of Debtor's amended complaint reveals that Debtor is alleging that he is only suing Aldridge Pite and Josephine Salmon, and thus claim preclusion does not apply. However, for the reasons set forth above, all of Debtor's claims against all the Defendants fail as a matter of law and must be dismissed. Debtor's attempt to limit his claims only to assert claims against Aldridge Pite and Ms. Salmon changes nothing and does not make any of his claims for relief viable. For these reasons, the Court denies Debtor leave to amend the Complaint.

## VI. <u>CONCLUSION</u>

Debtor failed to state a claim to relief that is plausible on its face. Debtor's Complaint lacks a cognizable legal theory or sufficient facts to support any cognizable legal theory. Debtor's essential claims for relief all turn on issues that he previously litigated and lost. Final judgments against him establishing the validity of the debt secured by his Property preclude his attempts to relitigate these issues again now. Accordingly, judgment will be entered in favor of Defendants, dismissing Debtor's adversary complaint and overruling Debtor's Objection to Proof of Claim #4 with prejudice. Each party shall bear its own attorney's fees, costs, and expenses.


DATED AND SIGNED ABOVE.

To be NOTICED by the BNC ("Bankruptcy Noticing Center") to:


MARK WADE MCCUNE
2131 N FRANNEA
TUCSON, AZ 85712
*Plaintiff / Debtor*

JANET MARIE SPEARS

Aldridge Pite, LLP
4375 Jutland Dr.
San Diego, CA 92117
*Attorney for Josephine Salmon;*
*Attorney for Aldridge Pite*

SOLOMON S. KROTZER
HOUSER LLP
2929 N. CENTRAL AVE., SUITE 1560
PHOENIX, AZ 85012
*Attorney for Wells Fargo Bank;*
*Attorney for Wells Fargo Bank, NA GMACM Home Equity Loan Trust 2004-HE1*

DIANNE C. KERNS
31 N. 6TH AVENUE
#105-152
TUCSON, AZ 85701
*Chapter 13 Trustee*

OFFICE OF U.S. TRUSTEE
230 North First Ave., Suite 204
Phoenix, AZ 85003-1706